IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANDRE LAMONT WILLIAMS                                                    PLAINTIFF

            v.                            Civil No. 5:21-cv-05174

DR. ROBERT KARAS; KARAS
CORRECTIONAL HEALTH; and
SHERIFF TIM HELDER, Washington
County Arkansas                                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Andre L. Williams ("Williams"), filed this *pro se* civil rights action under 42 U.S.C. § 1983. Williams proceeds *pro se* and *in forma pauperis* ("IFP"). The claims at issue in this case arose while Williams was incarcerated in the Washington County Detention Center ("WCDC"). While housed at the WCDC, Williams contends Defendants violated his federal constitutional rights by failing to properly follow COVID-19 quarantine protocols, failing to ensure inmates were not exposed to COVID-19 through staff members who left and returned to the facility daily, and in connection with the treatment given for COVID-19.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation on the pending Motion for Summary Judgment (ECF No. 22) filed by the Defendants.   Williams has responded (ECF No. 26), and the Motion is ready for decision.

## I.      BACKGROUND

Karas Correctional Health and Dr. Robert Karas are the designated medical providers for the WCDC. (ECF No. 24-1 at 2). Detainees are directed to place all non-emergency medical requests on the kiosk. *Id.* Medical staff review and respond to the detainee requests. *Id.* "No employee of the [WCDC] is authorized to make non-emergency medical decisions on behalf of any inmate." *Id.* at 3.

Williams was arrested and booked into the WCDC on August 20, 2021, on pending criminal charges.   (ECF No. 24-2 at 1).   He remained incarcerated there until November 4, 2021. *Id.* at 4-5.

A COVID-19 intake screening questionnaire was completed when Williams was booked. (ECF No. 24-4 at 1).   According to WCDC medical records, at the time of booking on August 20, 2021, Williams was given a one-time dose of vitamin D 3 100,000 IU.   (ECF No. 24-4 at 17).   At his deposition, Williams testified that he recalled being given a single mandatory dose of what he was told was vitamin D 3. (ECF No. 24-7 at 21). Williams believed, however, that he had already been incarcerated for approximately 32-33 days at the time of the dose. *Id.* He testified the pill was very large; he compared the pill's size to that of his pinky finger. *Id.* The following day, Williams suffered chills, fever, vomiting, pain, and problems with his bowel movements. *Id.* at 22 & 25. Williams testified that he also experienced problems with his vision, *i.e.,* difficulty reading. *Id.* In fact, he testified he still experiences difficulties with his vision and bowel movements. *Id.* After later learning about Ivermectin being prescribed to inmates, Williams began to believe that this pill may have been Ivermectin and not vitamin D 3.   *Id.* at 60.

2

Upon intake, Williams was quarantined for a period of 14 days before he was moved into general population.   (ECF No. 24-7 at 15). On September 1, 2021, Williams received a COVID-19 vaccine.   (ECF No. 24-4 at 3). On September 4th, Williams testified negative for COVID-19. (ECF No. 24-4 at 14). On September 9th, Williams tested positive for COVID-19.   (ECF No. 24-4 at 14).   Williams was offered a variety of treatment options which included:   vitamin D 3; Doxycycline; Montelukast; Ivermectin; Famotidine; Melatonin; and a pack containing vitamin C, vitamin D 3, and zinc.   (ECF No. 24-4 at 4-6). Williams only answered yes to the vitamin pack. *Id.* at 5.   From September 9th through September 19th, Williams was offered the vitamin pack and acetaminophen.[1]   (ECF No. 24-4 at 24-25).   According to Defendants' records, he refused most of the doses of both.   *Id.*

Out of 41 inmates in the block, Williams testified that only he and two other inmates tested positive.   (ECF No. 24-7 at 16).   The 3 inmates were moved into a different block with 4 other inmates who had tested positive and remained there for 10 days.   *Id.* at 17. Williams did not feel any effects or symptoms of COVID-19. *Id.* at 19. Williams did not believe he should be subjected to quarantine as he had no symptoms. *Id.* In fact, he maintains he never had COVID-19.   (ECF No. 26 at 1).

Williams believes he was exposed to COVID-19 from the guards who "go home every day and come back not wearing a mask, and not having gloves on." (ECF No. 24-7 at 44). Williams testified inmates do not know which guards are vaccinated. *Id.* at 47. In contrast, Williams points

---

[1] On September 11, 2021, no vitamin pack was offered.   (ECF No. 24-4 at 25).

out that if an inmate left the facility for a court appearance, the inmate was required to quarantine for 14 days prior to being housed in the general population. *Id.* at 44. Further, Williams testified the inmates were not provided masks on any type of consistent basis. *Id.* Williams' claims against Sheriff Helder is in his official capacity only. *Id.* at 65-66; *see also id. at* 49 (exposure claim is against Defendants in their official capacity).

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

4

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

Defendants maintain they are entitled to judgment in their favor on numerous grounds. The Court, however, finds it necessary to discuss only Defendants' first argument that Plaintiff failed to exhaust his administrative remedies. In this regard, Defendants maintain that Williams filed no grievance "indicating that he felt that he was either injured by any medical treatment for or related to COVID-19 and he failed to file a grievance that indicated that he felt that he was somehow wrongfully exposed to COVID-19 by some failure of Washington County, Sheriff Helder, or Dr. Karas." (ECF No. 23 at 6).

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted).   The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.  A prisoner's remedies are exhausted "when [the] inmate pursues the prison

5

grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

The WCDC has an inmate grievance procedure.  (ECF No. 24-6 at 11-12).  Inmates are advised that grievances may be filed "whenever the detainees believe they have been subjected to abuse, harassment, an abridgment of civil rights, or a denial of privileges specified in the Detainee Handbook." (ECF No. 24-1 at 4). Grievances are to be made within ten days of the alleged incident "unless there is good cause for a reasonable delay." *Id.* Grievances filed more than thirty days after an alleged incident are not considered. *Id.* Grievances are to be submitted via the kiosk located in the cell block. (ECF No. 24-6 at 32). The grievance procedure is outlined in the detainee handbook and states that grievances should include: the date and approximate time of the event; the names of the persons involved; the names of any witnesses; and the pertinent details of the event.  *Id.*

According to Corporal Mulvaney's affidavit, Plaintiff filed no grievances complaining of "any medical treatment he received related to COVID-19 or regarding any quarantine or separation practices related to COVID-19." (ECF No. 24-1 at 2). There is no doubt that Williams was aware of the grievance procedure and of how to use the kiosk.   In fact, he testified he was on

6

the kiosk every day regarding a dental problem which is "separate from the whole COVID-19 thing."   (ECF No. 24-7 at 19).   Williams also stated he "pretty much" lived on the kiosk.   *Id.* at 26.

Williams admits he did not report the symptoms he suffered because of taking the mandatory single dose pill which he now suggests (but cannot be certain) may have been Ivermectin.   (ECF No. at 25-26).   When asked when he grieved about anything related to COVID-19, William replied that his number one issue were his dental needs. *Id.* at 28-29. Perhaps to excuse his failure to file any COVID-19 medical treatment or exposure related grievances, Williams stated he "never knew that that I would have to grieve about something someone is supposedly, quote, unquote, trying to help me with." *Id.* at 28. In his Summary Judgment Response (ECF No. 26),[2]   Williams makes no argument that he submitted any grievances on the COVID-19 issues raised in this case.   Exhaustion is mandatory and dispositive in this instance.

## IV.   CONCLUSON

For these reasons, it is recommended that the Motion for Summary Judgment (ECF No. 22) be **GRANTED,** and Plaintiff's complaint **DISMISSED WITHOUT PREJUDICE** based on his failure to exhaust his administrative remedies.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely**

_____

[2] Plaintiff was given explicit instructions regarding how to respond to the summary judgment motion.   (ECF No. 25).

**objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of August 2022.

*Christy Comstock*

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE